# RULE v. GEDDES.

HABEAS CORPUS; PARENT AND CHILD; REFORM SCHOOL FOR GIRLS; COMMITMENT; CONSTITUTIONAL LAW.

1. The commitment for incorrigibility of a young girl to the reform school for girls in this District by the president of its board of trustees upon the application of the girl's father, as provided for by §§ 8 and 9 of the act of Congress of February 25, 1901 (31 Stat. at L. 809, chap. 478), is not in the nature of a prosecution, conviction, and punishment for crime; the institution not being a prison or penitentiary, but a school wherein girls of tender years exposed to immoral influences may be kept under restraint during minority, not as a punishment for crime but for their moral and physical well-being; and the fact that girls may, under certain provisions of the act, be committed to the same institution instead of the workhouse or prison upon the conviction of offenses of certain grades does not convert it into a place of punishment.

2. Under §§ 8 and 9 of the act of Congress of February 25, 1901, providing for the commitment of young girls to the reform school for girls in this District, it is competent for the president of the board of trustees of that institution, upon the application of the father of a girl of fifteen years of age, and for good cause shown, to commit the child to that institution during minority without notice and opportunity given her for judicial hearing. Her reasonable restraint in an institution for training and education without her consent during minority is within the authority of her parent, who has the right to transfer the guardianship of her person to properly constituted official authority.

3. In a proceeding by way of habeas corpus by one other than the father on behalf of a girl, who had been previously committed to the reform school for girls for incorrigibility on the application of the father, to procure her release, where the petition for the writ sets forth a written request by the father for his daughter's release, it will not be determined whether such a transfer of his guardianship is revocable or irrevocable, the father not being a party to the record.

4. Nor in such a proceeding, where the girl is less than eighteen years of age, will the question be determined whether under the general statutes relating to infants the right of restraint will terminate at that age instead of twenty-one years of age, the age fixed by the act of

Congress of February 25, 1901, relating to the commitment of young girls to the reform school for girls of this District.

No. 1343.   Submitted November 5, 1903.   Decided January 5, 1904.

HEARING on an appeal by the respondent, the superintendent of the Reform School for Girls of the District of Columbia, from a judgment of the Supreme Court of the District of Columbia, discharging the petitioner from the custody of the respondent.

*Reversed.*

The COURT in the opinion stated the case as follows :

The appellant, Amy J. Rule, as superintendent of the Reform School for Girls of the District of Columbia, appeals from a judgment of the supreme court of the District discharging the appellee from her custody.

The petition for the writ of habeas corpus was filed April 13, 1903, by Helen Geddes through Charles S. Peters as next friend, and alleged that petitioner was a citizen of the United States, resident in said District, and seventeen years of age; that on October 11, 1901, she was, without authority of law, incarcerated in the girls' reform school; that no trial was given her, and no proper proceeding had in any competent tribunal to deprive her of her liberty and confine her in said school and house of correction; that she is restrained of her liberty without authority of law and in violation of her constitutional rights, notwithstanding that she and her father have demanded her release.

The petition was sworn to by the next friend, who also states that he is the son-in-law of petitioner's father, and is about to remove to his house, and that petitioner desires to make her home with them, with the consent of her said father and affiant.

The respondent made return to the writ admitting the custody of petitioner, and alleging that the same was under regular commitment under the law.

The following proceedings appear in the exhibits made a part of said return:

## EXHIBIT "A."

Reform School for Girls of the District of Columbia.

Charles W. Geddes, of the city of Washington, District of Columbia, states that he is the father of Helen Geddes, a minor of the age of fifteen years, born in Washington April 19, 1886; that the said Helen Geddes is incorrigible, wholly beyond his control and management, and is a proper subject for the Reform School for Girls of the District of Columbia; and that it is his request and desire that the said Helen Geddes may be received into the said school according to the laws establishing and governing the same; that his wife, the mother of the said Helen Geddes, is no longer living.                    C. W. GEDDES.

Witness:  W. W. SMITH, 1317 F.

Subscribed and sworn to before me on the ninth day of October, A. D. 1901.

Witness my hand and the seal of the institution.

HENRY M. HOYT,

President of the Board of Trustees of the Reform School for Girls of the District of Columbia.

## EXHIBIT "B."

October 11, 1901.

In relation to the application of Charles W. Geddes for the admission of his daughter Helen to the Girls' Reform School he makes the following additional statements under oath: That his daughter's deterioration is due to the influence of bad company; that she has become entirely incorrigible and that he is unable to control her; that she will not go to school, and although all possible efforts have been made by him and other members of his family, she continues to consort with immoral companions,

VOL. XXIII—3

male and female, and has begun to take to drink. That while she is not violent in her temper, she disregards and disobeys his parental orders and neglects and refuses to perform her household duties.

## EXHIBIT "C."

Extract from the president's record of commitments, Reform School for Girls, D. C., page 5:

"October 9, 1901.

"Charles W. Geddes, being duly sworn, makes application for the admission of his daughter Helen to the Girls' Reform School. He states that he is a clerk in the Adjutant General's Office in, the War Department and lives at 310 E. Capitol street N. E.; that his said daughter, who is fifteen years old, has become entirely incorrigible and that he is unable to control her. Other statements made by him under oath are shown upon a memorandum signed by himself and on file with the papers.

"HENRY M. HOYT, President."

"October 11, 1901.

"Upon the aforesaid application, and upon sworn statements made to me and affidavits on file of Wm. W. Smith, and Officer O. T. Davis of the police force of the District, I have this day issued an order of committal of said Helen Geddes to the school.

"HENRY M. HOYT, President."

## EXHIBIT "D."

DISTRICT OF COLUMBIA, }
  City of Washington. }

O. T. Davis, a patrolman in the 9th precinct of the Washington police, being duly sworn, deposes and says that on or about September 1, 1901, when on his beat in the northeast part of the city, he met two young ladies somewhat intoxicated, and on his speaking to them they informed him that they were going to Chinatown with two young men, whereupon he said that they

could not do that, and he would take them home. Accordingly he did so, and while at first they protested, they finally permitted him to take them home without resistance. Deponent further says that in the course of conversation he learned that the girls were sisters and that the younger one.was Helen Geddes, who volunteered the statements that since her mother's death she had gotten into bad company and had gone to places where she drank, and that she knew this was wrong, and that she had done wrong in other ways. On arriving at their home, 310 East Capitol street N. E., their father was sitting in the yard, and thanked deponent for bringing his daughters home. Further deponent says not.                    O. T. Davis, M. P.

Sworn and subscribed to before me this 11th day of October, 1901.                    Henry M. Hoyt,
President Reform School for Girls, D. C.

### EXHIBIT "E."

District of Columbia,⎰ *ss:*
  City of Washington. ⎱

William W. Smith, being duly sworn, deposes and says that he is a correspondent of the Baltimore Sun, living in Washington; that he knows Charles W. Geddes and his daughter Helen; that while, in his opinion, the said Geddes has failed to guard and train his said daughter properly, and has himself subjected her to evil associations, the present situation and danger of the girl from moral deterioration is such that in order to save her she should be subjected to the restraint and discipline which the Reform School for Girls offers. And deponent further says that in his judgment, notwithstanding the father's failure to perform his duty, his application for the admission of his said daughter to the Reform School may properly be acted on and an order of commitment be issued.                    Wm. W. Smith.

Witness: Isabelle G. Smith.

Sworn and subscribed before me this 11th day of October, 1901.                    Henry M. Hoyt,
President Reform School for Girls, D. C.

## EXHIBIT "F."

Reform School for Girls of the District of Columbia.

WASHINGTON, October 11, 1901.

To Miss A. J. Rule, Superintendent of the Reform School for Girls, D. C.: You are hereby directed to take into the Reform School for Girls of the District of Columbia, under the eighth section of "An Act Revising and Amending the Various Acts Establishing and Relating to the Reform School in the District of Columbia," approved May 3, 1876 (U. S. 1 Rev. Stat. Supp. 103, chap. 90), which act is also applicable to the Reform School for Girls of the District of Columbia (U. S. 1 Rev. Stat. Supp. 596, chap. 595), Helen Geddes, residing at 310 E. Capitol St. N. E., an incorrigible girl, and to detain her an inmate of said school according to the laws of the United States governing the same.                                        HENRY M. HOYT,

President of the Board of Trustees of the Reform School for Girls of the District of Columbia.

Sections 8 and 9 of the act of February 25, 1901 (31 Stat. at L. 809, chap. 478), under which the foregoing proceedings were had, read as follows:

"Section 8. That whenever any girl under the age of seventeen years shall be brought before any court of the District of Columbia, or any judge of such court, and shall be convicted of any crime or misdemeanor punishable by fine or imprisonment other than imprisonment for life, such court or judge in lieu of sentencing her to imprisonment in the county jail or fining her, may commit her to the Reform School for Girls to remain until she shall arrive at the age of twenty-one years, unless sooner discharged by the board of trustees. And the judges of the criminal and police courts of the District of Columbia shall have power to commit to the Reform School for Girls, first, any girl under seventeen years of age who may be liable to punishment by imprisonment under any existing law of the District of Columbia, or any law that may be enacted and in force in said Dis-

trict; second, any girl under seventeen years of age, with the consent of her parent or guardian, against whom any charge of crime or misdemeanor shall have been made, upon proper cause shown to the satisfaction of the court; third, any girl under seventeen years of age, who is destitute of a suitable home and an adequate means of obtaining an honest living, or who is in danger of being brought up, or is brought up, to lead an idle or vicious life; fourth, any girl under seventeen years, who is incorrigible or habitually disregards the commands of her father and mother or guardian, who leads a vagrant life, or resorts to immoral places or practices, or neglects or refuses to perform labor suitable to her years and condition or to attend school. And the president of the board of trustees may also commit to the Reform School for Girls such girls as are mentioned in the foregoing third and fourth classes upon application or complaint, in writing, of a parent or guardian, or relative having charge of such girl, and upon such testimony in regard to the facts stated as shall be satisfactory to him, and for taking testimony in such cases he is hereby empowered to administer oaths.

"Section 9. That every girl sent to the Reform School for Girls shall remain until she is twenty-one years of age, unless sooner discharged or bound as an apprentice."

Petitioner demurred to the return as showing a commitment without due process of law. This was sustained, and judgment entered discharging the petitioner, from which this appeal has been prosecuted.

*Mr. Morgan H. Beach,* United States Attorney for the District of Columbia, and *Mr. Charles A. Keigwin,* Assistant, for the appellant:

1. A commitment to such an institution as the reform school of the District is not revocable at the wish of the parent, even where there is no statutory declaration as to the duration of the commitment. Church on Habeas Corpus, § 444. So it is held that a child once committed cannot be reclaimed merely on the ground that the parent has become able to care for it. *Dumain* v.

*Gwynne,* 10 Allen, 270; *People* v. *Kearney,* 31 Barbour, 430; *Whalen* v. *Olmstead,* 61 Conn. 263. And, in general, where the parent has assigned the custody of his child to another individual, it cannot be said that the child is illegally restrained. Hurd on Habeas Corpus, 537; Tyler on Infancy, 283; *Pool* v. *Gott,* 14 Law Reporter, 269. Such a transfer of parental authority is irrevocable. *James* v. *Cleghorn,* 54 Georgia, 9. See also *Macready* v. *Wilson,* 33 Connecticut, 321. In the present case the statute itself defines the effect of the commitment in point of duration, expressly declaring that it shall continue until the age of twenty-one. In this way the right of the board to hold the child throughout the period fixed by law is made independent of the parent's wishes and changes of mind on the subject.

2. At the hearing below, something was said on the point that the commitment of the girl was until she should reach twenty-one, while the Code makes her of age at eighteen. If it be true that such is the effect of the Code, it does not affect the present case, because, first, the particular statute governs the special case in derogation of the general provision; second, the commitment was prior to the Code and in accordance with existing law, and therefore not affected by subsequent legislation; and, third, in any case, the commitment is valid until the age of eighteen, and the excess over a legal commitment does not vitiate the judgment as to the period which is valid. *In re Graham,* 138 U. S. 461. Moreover, could it be considered that the present proceeding is at the instance of the father, and for the purpose of enforcing his right to resume parental authority, the writ of habeas corpus does not lie for that purpose. The statute by clear implication confers upon the board discretion in the matter of releasing children before their majority, and this is necessarily exclusive of the jurisdiction of the courts. So, in the case where a parent had applied to a board having such discretion for the release of his child and had been refused, as in this instance, it was held that the propriety of discharging the child could not be considered on habeas corpus. *In re Wares,* 161 Mass. 70. As the case stands, there has been a legal devolution of her guardianship from her father to the board of trustees; and, in this pro-

·ceeding, the court can look only to the legal title to her custody. The question as to what would be best for the child's welfare, and who is most fit for the office of guardian, can be tried only upon a bill in equity. If the board appears to be the legally constituted guardian, she cannot be taken from its custody in this form of action. *People* v. *Porter,* 1 Duer, 716 ; *Rex* v. *Reynolds,* 6 Term Rep. 499 ; *Rex* v. *Edwards,* 7 Term Rep. 745. So a testamentary guardian may reclaim the custody of his ward on habeas corpus. *Rex* v. *Isley,* 5 Add. and Ell. 441 ; *Rex* v. *Hopkins,* 7 East, 579. That a bill in equity is required to establish the right to guardianship: *In re Wollstonecroft,* 4 Johns. Ch. 181 ; *People* v. *Mercein,* 8 Paige, 55 ; *In re Waldron,* 13 Johnson, 418 ; *English* v. *English,* 32 N. J. Eq. 742 ; *Baird* v. *Baird,* 19 N. J. Eq. 482.

3. The record of the proceedings antecedent to commitment of the petitioner is not open to examination in this case. Under similar statutes it is held that the proceedings had before the committing officer cannot be examined collaterally with reference to their regularity or sufficiency. Church on Habeas Corpus, § 442. Even where the proceeding departs from statutory requirements and the child is committed by the magistrate upon his own knowledge and information, and without such hearing as the statute allows, the infant is not released. *State* v. *Kilvington,* 100 Tenn. 234. See also *People* v. *N. Y. Asylum,* 12 Abbott Pr. 92.

4. The statute prescribes no procedure and requires no papers to be filed, except an application by the girl's father. It is not necessary to the jurisdiction, or even to the regularity of the proceeding, that there should be anything in the nature of an information, indictment, or complaint to make a formal charge or set out the nature of the girl's offending. It is not perceived how the supposed deficiencies in the papers can affect the validity of the conclusion reached. *People* v. *New York Catholic Protectory,* 106 N. Y. 604, relied upon in former argument, was a proceeding of strictly criminal character, being predicated upon a section of the Penal Code which prohibited, not only the vagrancy of children, but their consorting with prostitutes ; and the child

was charged with both offenses. The record was therefore subject to such scrutiny and criticism as would apply in any other proceeding looking to the punishment of crime. Here, on the other hand, there was no charge of misdemeanor, but only of incorrigibility, a purely domestic offense, and the object was not punishment, but reformation. It is well settled by authorities to be cited at a later stage of the argument that such a proceeding as the present is essentially different from one of criminal character. It may be added that in this District the complaint in the *Catholic Protectory Case* would have been held sufficient against collateral attack under the decisions in *Latney* v. *United States,* 18 App. D. C. 265; *United States* v. *Davis, Ibid.* 280; *Frisbie* v. *United States,* 157 U. S. 160.

5. Some question was made in the court below as to the power of Congress to invest the president of the board with the power to hold proceedings for the commitment of infants to the Reform School, on the ground that such action involves judicial power, which, it is said, cannot properly be conferred except upon a judicial tribunal created in accordance with the requirements of the Constitution. But see *Prigg* v. *Com.* 16 Peters, 621; *Sim's Case,* 7 Cushing, 304; *Nishimura Ekiu* v. *United States,* 142 U. S. 651; *Murray* v. *Hoboken, &c. Co.* 18 How. 272; *Am. Ins. Co.* v. *Canter,* 1 Peters, 511.

6. Assuming that the effect of the record is to show that the appellee was committed without notice or hearing, the proceeding was, nevertheless, due process of law in the true sense of that phrase as applied to one in her situation. *Long Island Co.* v. *Brooklyn,* 166 U. S. 695; *Davidson* v. *New Orleans,* 96 U. S. 97; *Kennard* v. *Louisiana,* 93 U. S. 480; *Eilenbecker* v. *Plymouth Co.* 134 U. S. 31; *Walker* v. *Sauvinet,* 92 U. S. 90; *Callan* v. *Wilson,* 127 U. S. 540; *Lawton* v. *Steele,* 152 U. S. 141; *Carthage* v. *Frederick,* 122 N. Y. 268; Tiedeman's Lim. of Police Power, 12; *Thorpe* v. *R. R. Co.* 27 Vermont, 140; *People* v. *Plank Road Co.* 9 Michigan, 306; *Callan* v. *Wilson,* 127 U. S. 540; *Lawton* v. *Steele,* 152 U. S. 141; *Leeper* v. *Texas,* 139 U. S. 462; 2 Kent Comm. 13; *Hurtado* v. *California,* 110 U. S. 527; *Ex parte Wall,* 107 U. S. 289; *Caldwell* v. *Texas,* 137 U.

S. 692; *Marchant* v. *R. R. Co.* 153 U. S. 380; *In re Converse,* 137 U. S. 631; *Hayes* v. *Missouri,* 120 U. S. 68; *Barbier* v. *Connally,* 113 U. S. 27; *Missouri* v. *Lewis,* 101 U. S. 22; *James* v. *Reynolds' Adm'rs.* 2 Texas, 252. The effect of these decisions is to establish as the characteristics of due process: First, that it must be regular, as distinguished from arbitrary or fanciful; second, that it must be general, operating upon all alike under like conditions, as distinguished from partial and applied with discrimination not resting upon reason; third, that it must be usual and in accordance with accepted forms and principles; and, fourth, that it must be adapted to the nature of the cases to which it is applied and to the objects sought to be attained. It is obvious that in divers cases all of these requirements may be fulfilled without either notice or hearing to the parties affected by due process. And, in point of fact, the cases are not uncommon in which, either by reason of ancient usage or because the ordinary forms of procedure are not adapted to the nature of the subject-matter, those forms are so modified as to dispense with one or both of these usual elements of due process. Of such cases the present instance of an infant is a familiar example. Infants, lunatics, and various other classes are, upon principle, reason, and authority, entitled and subjected to various peculiar modifications of legal process, which is, notwithstanding, as to them, due process of law. Thus, in certain kinds of proceedings against infant defendants, there is no process issued or served, but jurisdiction is acquired by a commission to appoint a guardian *ad litem.* *Duncanson* v. *Manson,* 3 App. D. C. 260, 166 U. S. 533. See also *Nelson* v. *Moon,* 3 McLean, 319; *Bulow* v. *White,* 3 South Carolina, 318; *Simmons* v. *Baynard,* 30 Fed. Rep. 532; *Havens* v. *Drake,* 43 Kansas, 484; *McKim* v. *Doane,* 137 Mass. 195; *Emery* v. *Hildreths,* 2 Gray, 228; *Bassett* v. *Crafts,* 129 Mass. 513; *Robb* v. *Lessee of Irwin,* 15 Ohio, 700; *Bustard* v. *Gates,* 4 Dana (Ky.) 436. So, as to lunatics, while it is generally requisite that they should have personal notice of proceedings affecting their property, yet such proceedings are not, as in the case of sane persons, made void by the failure to serve process upon the lunatics, if their interests are fairly represented

by guardians, committees, or relatives. *Dodge* v. *Cole,* 97 Illinois, 328; *Dutcher* v. *Hill,* 29 Missouri, 271; *McKim* v. *Doane,* 137 Mass. 195. See also *Ex parte Southcot,* 2 Vesey, 401; *In re Perkins,* 2 Johnson Ch. 124; *In re Petit,* 2 Paige, 174; *In re Demelt,* 27 Hun, 480; *Kimball* v. *Fisk,* 39 New Hampshire, 110; *Rogers* v. *Walker,* 6 Pa. St. 371; *Arrington* v. *Short,* 3 Hawks (N. C.) 71; *Merlock* v. *Cogburn,* 1 Rich. Eq. (S. C.) 477; *Campbell's Case,* 2 Bland, 217; *In re Whiteneck,* 3 New Jersey Eq. 252; *In re Child,* 16 New Jersey Eq. 499.

All the cases heretofore cited involved judicial proceedings, and the decisions establish the fact that even in such proceedings due process does not necessarily imply notice and hearing. It will be observed also that in those passages in which the courts have spoken of notice and hearing as essential to due process they were speaking of the ordinary course of litigation, and the language used, though apparently of general application, is properly limited to the procedure of the usual tribunals. But there is a considerable class of cases which lies beyond the domain of usual litigation and the customary jurisdiction of the courts, and in this sphere it is found that due process of law, as generally understood, is subject to numerous exceptions and decided limitations. Thus the provision against restraint of liberty is generally held to have no application whatever in the cases of lunatics, infants, and some other classes of persons who need peculiar protection or special oversight in their own interest or in that of society. Persons, for example, suffering from contagious diseases may be imprisoned in quarantine without other process of law than the command of the health officer. *Harrison* v. *Mayor, &c.* 1 Gill, 264; *Morgan* v. *Louisiana,* 118 U. S. 455. It is likewise held in some courts that lunatics may be restrained of their liberty and committed to appropriate places of treatment without any legal process at all. *In re Oakes,* 8 Law Reporter, 122; *Davis* v. *Merrill,* 47 New Hampshire, 208; *Van Deusen* v. *Newcomer,* 40 Michigan, 90. See also *Denny* v. *Tyler,* 3 Allen, 225; *Gaston* v. *Babcock,* 6 Wisconsin, 490; *Black Hawk County* v. *Springer,* 58 Iowa, 417; *Chavannes* v. *Priestly,* 80 Iowa, 320; *In re Dowdell,* 169 Mass. 387;

*In re Ross,* 38 La. Ann. 523.   A statute has been held valid which authorized overseers of the poor to commit to the workhouse persons leading a vagrant and dissolute life, and this on the ground that the purpose of such an enactment is not penal, but correctional and reformatory.   *Adeline Nott's Case,* 11 Maine, 208; *Portland* v. *Bangor,* 42 Maine, 403.   See also *In re Tracy,* 1 Paige, 582; *Nishimura Eiku* v. *United States,* 142 U. S. 651.   Perhaps the most exhaustive and most searching discussion of the nature and essentials of due process of law is that made in the case of *Murray* v. *Hoboken, &c. Co.* 18 How. 272; and it happens that this case holds that neither notice nor hearing is indispensable to due process, and that in a case involving the taking of individual property, and, still further, in a case which affected neither infants, lunatics, nor any other of those peculiar classes which are, as has been seen, the subjects of exceptional consideration.

7. The petitioner was not entitled to due process of law, because the case was not one which required any legal process at all.   The girl was but fifteen years old.   She lived with her father and was subject to his parental authority.   That such authority implies the power of personal restraint, either for punishment, correction, or education, is too obvious to require or to excuse argument.   It is equally obvious that, had Mr. Geddes chosen to exercise discipline upon his daughter, there would have been no need of recourse to the courts, the police, or to any other magistrates, or to any process of law.   In this particular case, so far as can be inferred from the record, the father might justifiably have resorted to some such means to check the girl's downward course.   A man may put restraint even upon his wife "if she make undue use of her liberty by going into lewd company." 2 Kent, Comm. 181; Schouler, Dom. Rel., § 45; 1 Blackst., Comm. 445; *State* v. *Craton,* 6 Iredell, Law, 164; *In re Price,* 2 Fost. & F. 263; *In re Lister,* 8 Modern, 22.   Under the Maryland Act of 1793, chapter 45, in force in this District at the time Helen Geddes was committed, a father could bind out his child as an apprentice until the age of twenty-one.   This act did not require the consent of the child and was held valid.   *Handy* v.

*Brown,* 1 Cranch C. C. 610; *Baker* v. *Lauterbach,* 68 Md. 64.

It is well settled that under proper circumstances and by appropriate proceedings children may be taken from the care of their parents. *Industrial School* v. *Supervisors,* 40 Wisc. 328; *Farnham* v. *Pierce,* 141 Mass. 203. The case of *People* v. *Turner,* 55 Ill. 280, holding to the contrary, is substantially overruled by later cases in the same State. *In re Ferrier,* 103 Illinois, 367; *McLean County* v. *Humphreys,* 104 Illinois, 378. In the present instance, as has been pointed out, the case is not complicated by any such considerations. The father himself committed the child to the school, and raises no question with respect to his parental rights in the premises. It is only the girl who undertakes to object to the arrangement, and to her it is sufficient answer to say that she is not deprived of her right to liberty, because she was never entitled to liberty. The appellee not being held as a criminal or as amenable to the penalties of the criminal law, the provisions for due process of law do not extend to her case. *Ex parte Crounse,* 4 Wharton, 11. In Maryland, under a similar statute, it was held that a boy committed to the House of Refuge, upon the complaint of his father, without hearing or evidence, could not be reclaimed by the father, following *Ex parte Crouse. Roth* v. *House of Refuge,* 31 Md. 329; *Industrial School* v. *Supervisors,* 40 Wis. 328; *Farnham* v. *Pierce,* 141 Mass. 203; *Prescott* v. *State,* 19 Ohio St. 184; *House of Refuge* v. *Ryan,* 37 Ohio St. 497; *Ex parte Ah Peen,* 51 California, 280; *Reynolds* v. *Howe,* 51 Conn. 472; *State* v. *Kilvington,* 100 Tennessee, 227. Other cases to the same effect are *In re Ferrier,* 103 Illinois, 367; *Mason* v. *Barnett,* 3 Washington, 609; *State* v. *Brown,* 50 Minnesota, 353. *State* v. *Ray,* 63 New Hampshire, 406, holds simply that children may not, against the will of their parents and their own, be committed to an institution appropriated exclusively to the care of juvenile criminals where the only ground allowed for such commitment is a charge of crime, and there has been no conviction. The opinion distinguishes the cases in Wisconsin, Illinois, Maryland, and Pennsylvania, in that these cases dealt with children who were unfortunate and not criminal, and that the institutions contemplated were not

prisons, but schools.   But the fact that children may be committed to a reformatory institution upon conviction of crime does not make the institution a prison if there are other classes of children subject to be committed to the same place.   *Industrial School* v. *Supervisors,* 40 Wisconsin, 328.

*Mr. Wilton J. Lambert* and *Mr. D. W. Baker* for the appellee:

1.  It is a well-settled principle of law that whenever a person is deprived of the privilege of going when and where he pleases, he is restrained of his liberty and has a right to have a court to inquire into such restraint and determine whether or not it is unlawful.   *Commonwealth* v. *Redgway,* 2 Ashm. Pa. 247.   And when this restraint has been occasioned by an order of a tribunal of limited or inferior jurisdiction, then there must appear upon the whole record facts sufficient to show that that tribunal had jurisdiction. *In re Emma Travis,* 55 Howard's Prac. 347; *People ex rel. Riper* v. *The New York Catholic Protectorate,* 106 N. Y. 604; *In re White,* 43 Minn. 250; *State* v. *Kinmore,* 54 Minn. 135; *In matter of Margaret Heery,* 51 Hun, 372. In the case of the *People ex rel. Slatzkata* v. *Baker,* 3 N. Y. Supp. 536, the court held that a commitment which fails to recite jurisdictional facts is unauthorized.   *People ex rel. Day* v. *School of Industry,* 7 N. Y. Supp. 737; *Van Heck* v. *N. Y. Cat. Pro.* 101 N. Y. 195; *Farnham* v. *Pierce,* 141 Mass. 203; *Gerney* v. *Tufts,* 37 Me. 130; *State ex rel. Rea* v. *Kinmore,* 54 Minn. 135; *Chandler* v. *Nash,* 5 Mich. 415.

2.  The second contention of the appellee is that the president of the reform school never had jurisdiction over the person of the appellee; and this brings up the question of whether or not the appellee was incarcerated by due process of law.   An examination of the authorities cited by the appellant will show that not one of them comes within this case, for in all of them the infants were either present in court or in the custody of the court at the time that the order was made, so that the court had jurisdiction over the infants themselves, the questions arising in most of the cases cited by the appellant being the right of the father or

guardian of the infant to notice. It is insisted that, as far as this jurisdiction is concerned, that no person can be deprived of his life, liberty, or property without some notice and a hearing on the merits of the case. According to the decisions of the Supreme Court of the United States, one of the essential elements of due process of law is notice and an opportunity to defend. In examining this question of due process of law we have here the question of the right of the infant and not any question as to the right of the father or of the State. This court is called upon to decide whether or not, under the act under which these proceedings were had, an infant under the age of fifteen can be detained and deprived of her liberty without having any notice of the proceedings or without being before the court that makes the order. Against this contention of the appellee the appellant raises two objections,—first, that no notice is required at all in any case where an infant is incarcerated by petition on the part of the father; secondly, that the statute not requiring a notice to the infant, and being silent thereon means that the infant is to be tried and incarcerated without any notice to her. In considering this question the appellant considers the situation of lunatics and infants upon the same footing. If that is so, then, according to the weight of authority, no due process of law was used to incarcerate the appellee; for it is a well-settled principle of law that no person can be incarcerated by an *ex parte* proceeding of which that person has had no notice; and while some authorities cited in the brief of the appellant seem to hold that the law is not so in the case of lunatics, an examination of the authorities so cited will show that in nearly all of the cases the lunatics were served with process, and these general expressions of want of notice were used in cases where the court was construing statutes which did not require notice where a party was violently insane and had been incarcerated, and was in the custody of the court. The law in some of the States provides that a person, after he is incarcerated, can take immediate action to have himself released, some courts holding in this latter case that the incarceration was merely temporary, the party having the right under the statute to have himself brought into court

and cause tried forthwith. *Simon* v. *Craft*, 182 U. S. 436. See also *Scott* v. *McNeil*, 154 U. S. 34; *Hovey* v. *Elliott*, 167 U. S. 409; *Pennoyer* v. *Neff*, 95 U. S. 714; *Zeigler* v. *Railroad Co.* 58 Ala. 594; *Parsons* v. *Russell*, 11 Md. 113; *City of Portland* v. *The City of Bangor*, 65 Me. 120; *In matter of Adrian Janes*, 30 How. Prac. 446; *Chase* v. *Hathaway*, 14 Mass. 222; *In re Lambert*, 55 Law. Rep. Anno. 856; *Hohlman* v. *Hohlman*, 80 Me. 141. It will be seen from these authorities that the mere fact that the statute is silent as to notice could not affect the question of notice if the party is deprived of any right or property, or of personal liberty within the meaning of due process of law. See also *Hathaway* v. *Clark*, 5 Pick. 490; *In re N. H. Lambert*, 55 Law Rep. Anno. 857; *In the matter of Rust*, 177 Pa. 340; *People ex rel. Sullivan* v. *Wendell et al.* 68 N. Y. Suppl. 948; *Moulton* v. *Henderson*, 62 Ala. 426; *Arrington* v. *Arrington*, 32 Ark. 674; *Morton* v. *Sims*, 64 Ga. 298; *In re Wellman*, 3 Kan. App. 100; *Segar* v. *Pellerin*, 16 La. Ann. 63; *Hohlman* v. *Hohlman*, 80 Me. 139; *Albright* v. *Rider*, 81 Tenn. 574; *Gredley* v. *The College of St. Francis Xavier*, 137 N. Y. 327; *In the matter of petition of Blewett*, 131 N. Y. 541; *Van Auker* v. *New Jersey*, 10 N. J. Chan. 186; *McCurry* v. *Hooper*, 12 Ala. 823. In this jurisdiction the court has held that a person cannot be incarcerated in an asylum on *ex parte* affidavits of physicians, but that he is entitled to be heard. *In re Bryant*, 3 Mackey, 494.

It will be seen from these authorities that in lunacy cases a notice is a prerequisite to the jurisdiction of the court to hear the matter, and the remaining question to be considered is whether or not an infant has not the same rights in this jurisdiction as a lunatic or a pauper. In this case the appellee was over the age of fourteen, and if a guardian had been desired for her for any reason, such guardian could not have been appointed unless she was brought into court and selected the guardian. How can it be said, then, that she was entitled to no notice of this hearing and not entitled to be heard? In examining the authorities on this question of the incarceration of infants cited by the appellant it will be seen that in all of the cases referred to by him the infant was in the custody of the court by some process, or brought

before the court by some summary process, while here in this
case it is admitted that there was no custody, no process, and
no notice until the order for commitment, which order was mere-
ly the warrant for the appellant to hold the appellee, and no no-
tice whatever to the appellee of any proceedings to be taken
against her.    As to the right of an infant, see *O'Connell* v. *Tur-
ner,* 55 Ill. 280.

Mr. Justice SHEPARD delivered the opinion of the Court:

We are of the opinion that the court erred in sustaining the de-
murrer and discharging the petitioner.

1. Apparently the error was committed under the apprehen-
sion that the proceeding culminating in the commitment of the
petitioner to the Reform School for Girls was in the nature of a
prosecution, conviction, and punishment for crime. Unquestion-
ably, if such were the case, the infant petitioner would be entitled
to the protection of all the safeguards of the Constitution to the
same extent as an adult.   But the Reform School for Girls is not
a prison or penitentiary.   It is what it purports to be—a school
wherein girls of tender years, who may be exposed by conditions
of misfortune, or who may perversely expose themselves to im-
moral surroundings and influences, may be kept under reasonable
restraint during their minority, not as a punishment for crime,
but for their moral and physical well being.   It is a beneficent
public charity made necessary by the conditions of modern life,
especially where population is crowded in narrow limits.

It is true that by certain provisions of the act under consid-
eration, girls under the age of seventeen years may be commit-
ted to the same institution, instead of the workhouse or peniten-
tiary, when convicted of offenses of certain grades.   But this fact
does not convert the place into one of punishment.   It remains
a school of reform for girls to which the law, pervaded by a
spirit of humanity, also permits certain youthful criminals to
be committed for reformation instead of the punishment that
might be inflicted, when, in the discretion of the presiding judge,
they may appear to be capable of reformation, and of being

taught to lead lives of decency and usefulness. *Milwaukee Industrial School* v. *Milwaukee County,* 40 Wis. 328, 337, 22 Am. Rep. 702; *Prescott* v. *State,* 19 Ohio St. 184, 188, 2 Am. Rep. 388; *Farnham* v. *Pierce,* 141 Mass. 203, 204, 55 Am. Rep. 452, 6 N. E. 830.

Moreover, it is to be presumed, although the institution occupies one location and is under one management, that care is exercised in its administration in respect of classification and association of the inmates, so as best to subserve the beneficent purpose of its foundation.

Matter of administration, however, cuts no figure in the case as presented, which alone concerns the general character and purpose of the institution as disclosed in the act of Congress under which it is operated.

2. That the conduct of the petitioner just prior to her commitment brought her within the conditions of the fourth class as prescribed in the section of the statute before quoted is quite clear from the sworn statements of her father and others, upon which the president of the board acted, as shown in the return.

Acting, then, within the letter of the law, was it competent for him to commit the petitioner to the reform school during the remainder of her minority, without notice and opportunity given her for a judicial hearing? We are of the opinion that it was.

The petitioner was a minor between fifteen and seventeen years of age. Her father, as her natural guardian, had the legal right to regulate her conduct, to restrain her liberty within all reasonable bounds, and to direct her training and education. She was not entitled to general freedom of action, but was under his tutelage. He had the legal right to confine her within certain limits, to select her associates, and to commit her to the restraint of an institution for training and education during her minority, without her consent. Her reasonable detention during such period for purposes of education would not be imprisonment, but the lawful restraint implied in the exercise of recognized parental authority. This right of the parent is subordinate to the power of the State, and when exercised unreasonably and cruelly, or when not exercised at all, so that the child may be

subjected to degrading and immoral influences, may be taken away and transferred to other guardian agencies provided by the State. In this case it appears that the parent was unable to restrain petitioner within proper bounds, and he availed himself of a law enacted to meet such an exigency, by providing a way for the transfer of his right of control to the State. Unable to assert his own legal power of restraint, and apprehensive of the ruin to which his child seemed drifting, he appealed to the State to assume the functions of guardianship and take her into its protection during her years of nonage.

The proceedings had upon this application were but the methods prescribed by law for the permitted transfer of guardianship of the person and for the protection of the State from imposition. The so-called commitment was but the legal warrant for the admission of the petitioner into the institution, and no more an order for imprisonment than are letters of guardianship issued by a probate court, or a decree transferring the possession of an infant made by a tribunal having jurisdiction of its custody in a particular case. The child herself, having no right to control her own action or to select her own course of life, had no legal right to be heard in these proceedings. Hence, the law which does not require her to be brought in person before the committing officer or extend her the privilege of a hearing on her own behalf cannot be said to deprive her of the benefit of due process of law. The rationale of our conclusion is supported by the following cases, which disclose points of analogy: *Ex parte Crouse,* 4 Whart. 9, 11; *Roth* v. *House of Refuge,* 31 Md. 329, 334; *Re Ferrier,* 103 Ill. 367, 42 Am. Rep. 10; *McLean County* v. *Humphreys,* 104 Ill. 378; *Prescott* v. *State,* 19 Ohio St. 184, 188, 2 Am. Rep. 388; *Ex parte Ah Peen,* 51 Cal. 280; *Reynolds* v. *Howe,* 51 Conn. 472, 477; *Whalen* v. *Olmstead,* 61 Conn. 263, 15 L. R. A. 593, 23 Atl. 964; *Dumain* v. *Gwynne,* 10 Allen, 270, 275.

3. The fact that the father has undertaken indirectly to revoke the transfer of his right of guardianship, as shown by his written request for petitioner's release as alleged in her petition, cannot affect the disposition of the case. Whilst many respect-

able authorities hold that such a disposition freely made is irrevocable, we are not called upon to determine the question at this time, because the father is not a party to the record.

4. Nor is it necessary to determine the question whether, under other provisions of the general statutes relating to infants, the right of restraint in this case will terminate upon petitioner's attainment of the age of eighteen years instead of that of twenty-one years, as provided in the act under consideration, for the reason that she has not yet attained to that age.

If she shall be denied the right to depart from the school when that period shall have been attained there will be nothing to prevent her raising the question in another proceeding to that end.

For the reasons given the judgment will be reversed with costs and the cause remanded with direction to overrule the demurrer to the return, dismiss the petition, and return the custody of the petitioner to the Superintendent of the Reform School for Girls. It is so ordered.                                    *Reversed.*