Isaac Lewis WHITE, Petitioner,

v.

Curtis REID, Superintendent, District of Columbia Jail, Respondent.

No. 88–54.

United States District Court
District of Columbia.

Nov. 23, 1954.

B. Michael Landesman, Washington, D. C., for petitioner.

Vernon E. West, Corp. Counsel of District of Columbia, Milton D. Korman, Richard Barton, Asst. Corp. Counsel of District of Columbia, Washington, D. C., for respondent.

LAWS, Chief Judge.

On May 26, 1952, while on probation from the Juvenile Court of the District of Columbia, petitioner, then sixteen years of age, was taken into custody on two charges of unauthorized use of an automobile. On August 15, 1952, he appeared before the Juvenile Court, acknowledged his participation in the alleged violations of law, and was committed to the National Training School for Boys until twenty-one years of age. On October 1, 1953, he was released on parole. On April 23, 1954, he was arrested on a charge of first degree murder and confined in the District of Columbia Jail. The Juvenile Court waived jurisdiction to this Court. Thereafter petitioner was indicted on a charge of misprision of felony in connection with the

murder case. The indictment was dismissed on October 13, 1954. The next day a warrant, issued on April 28, 1954, and placed against him as a detainer by the Youth Division of the United States Board of Parole, was executed. Petitioner remains in custody of respondent, the Superintendent of the Jail, under authority of that warrant. To test the legality of his detention, he invokes the habeas corpus jurisdiction of this Court.

Respondent is represented by the Corporation Counsel of the District of Columbia, notwithstanding certain questions affecting the power of the Attorney General of the United States and of the United States Board of Parole are involved. The United States Attorney for the District of Columbia has been served with a copy of the writ of habeas corpus. Thus it appears the United States has had opportunity to appear.

The gravamen of petitioner's suit is that he was denied Constitutional rights in the proceedings and commitment of August 15, 1952, in that he was deprived of his liberty without due process of law and without presentment or indictment by a grand jury, contrary to the Fifth Amendment, and that he was not granted the right to public trial by jury, confronted with the witnesses against him, or accorded the right of compulsory process for obtaining witnesses in his favor or the right to assistance of counsel for his defense, in violation of the Sixth Amendment.

Proceedings against juveniles brought in the Juvenile Court are not criminal and penal in character, but are an adjudication upon the status of a child in the nature of a guardianship imposed by the state as *parens patriae* to provide the care and guidance that under normal circumstances would be furnished by the natural parents. Thomas v. United States, 1941, 74 App.D.C. 167, 121 F.2d 905; Richardson v. Browning, 1927, 57 App.D.C. 186, 18 F.2d 1008; Rule v. Geddes, 1904, 23 App.D.C. 31. "The fundamental philosophy of the juvenile court laws is that a delinquent child is to be considered and treated not as a criminal but as a person requiring care, education and protection. He is not thought of as 'a bad man who should be punished, but as an erring or sick child who needs help.'" Thomas v. United States, supra, 74 App.D.C. at page 170, 121 F.2d at page 908. Constitutional safeguards guaranteed one accused of crime therefore are not applicable. The proceedings in respect of petitioner having been in compliance with statutory requirements, there was no denial of due process of law. See 31 Am.Jur., Juvenile Courts and Offenders, § 6; 43 C.J.S., Infants, § 97.

As in all habeas corpus proceedings, the question before the Court is whether petitioner is being presently unlawfully restrained of his liberty. Although the Court may inquire into the validity of not only the fact of confinement but also the place of confinement, Miller v. Overholser, 1953, 92 U.S.App. D.C. 110, 206 F.2d 415, the Court will not speculate that petitioner may be transferred to the Federal Reformatory at Petersburg, Virginia, as orally suggested by counsel at the hearing of this case, but may only determine whether the District of Columbia Jail is a proper place for the continued detention of petitioner.

Petitioner having been committed under Juvenile Court proceedings, the test to be applied is whether the state is presently exercising a reasonable restraint as guardian *in loco parentis,* or whether petitioner is being confined as punishment for an offense. In upholding the Constitutionality of juvenile court acts, the Courts have emphasized not only that the proceedings are non-criminal, but also that the institution to which the delinquent is committed is not of a penal character. See, e. g., Ex parte Januszewski, C.C.Ohio, 1911, 196 F. 123; Ex parte State ex rel. Echols, 1944, 245 Ala. 353, 17 So.2d 449; Dendy v. Wilson, 1944, 142 Tex. 460, 179 S.W.2d 269, 151 A.L.R. 1217; Wissenberg v. Bradley, 1930, 209 Iowa 813, 229 N.W. 205, 67 A.L.R. 1075; Bryant v. Brown, 1928, 151 Miss. 398, 118 So. 184, 60 A.L.R. 1325;

650

Ex parte Daedler, 1924, 194 Cal. 320, 228 P. 467; Cinque v. Boyd, 1923, 99 Conn. 70, 121 A. 678; Ex parte King, 1919, 141 Ark. 213, 217 S.W. 465; In re Watson, 1911, 157 N.C. 340, 72 S.E. 1049. This requirement is pointed up by decisions of the Supreme Court of New Hampshire. In State ex rel. Cunningham v. Ray, 1885, 63 N.H. 406, 56 Am.Rep. 529, the Court held unconstitutional a statute providing for commitment to reform school without jury trial, against the contention it was not punishment and the school was merely party of the state school system, the Court observing the school had always been regarded as a quasi penal institution, and detention there as involuntary, constrained and to some extent in the nature of punishment, with more or less of disgrace attached. Later, when a new statute had been enacted in no way comparable to this former act, its constitutionality was upheld in Petition of Morin, 1949, 95 N.H. 518, 68 A.2d 668, 670, the Court noting specifically there was no evidence to suggest the industrial school there was other than a " 'real school, not a prison in disguise' ".

█ It is true that in both juvenile court and criminal proceedings a person may be deprived of his liberty. It is likewise true in the modern administration of penal institutions increasing emphasis has wisely been placed upon the rehabilitation and training of prisoners as essential elements in a program for crime prevention and correction. Therefore some of the features of penal institutions resemble those of educational, industrial and training schools for juvenile delinquents. The basic function and purpose of penal institutions, however, is punishment as a deterrent to crime. However broad the different methods of discipline, care and treatment that are appropriate for individual prisoners according to age, character, mental condition, and the like, there is a fundamental legal and practical difference in purpose and technique. Unless the institution is one whose primary concern is the individual's moral and physical well-being, unless its facilities are intended for and adapted to guidance, care, educa-tion and training rather than punishment, unless its supervision is that of a guardian, not that of a prison guard or jailor, it seems clear a commitment to such institution is by reason of conviction of crime and cannot withstand an assault for violation of fundamental Constitutional safeguards.

Respondent relies upon statute, 18 U.S.C. § 4082, as authority to detain petitioner pending transfer to another institution. In Huff v. O'Bryant, 1941, 74 App.D.C. 19, 121 F.2d 890, it was held a juvenile could not be transferred to Lorton Reformatory, since he was subject under then existing statutes to the orders of the Juvenile Court and not those of the Attorney General. While the decision was based upon statutory interpretation and not Constitutional issues, the Court observed that Lorton Reformatory was to all intents and purposes an institution of the penitentiary type, the place of confinement of hardened criminals, "repeaters" and the like. As a result of this decision, the statute was amended to confer authority on the Attorney General over custody and transfer of "all persons committed to the National Training School for Boys."

Respondent contends the amendment gives the Attorney General discretion as an administrative matter to detain any person committed to the National Training School for Boys for transfer to any federal institution without being subject to judicial review. If this were so, a juvenile committed by the Juvenile Court might be incarcerated under the statute at the United States Penitentiary at Alcatraz, California, or Leavenworth, Kansas, where those convicted of crime are restrained.

█ In this jurisdiction, this Court and not the Juvenile Court is the Court of competent jurisdiction designated for trial of a felony. A Juvenile Court hearing in respect of a juvenile is not a criminal trial, and a commitment is not a conviction and punishment for a felony. To send a juvenile to the usual penitentiary where hardened criminals are kept in close confinement and under special types of strict discipline, where

the juvenile would inevitably come into contact with them and suffer the same type of treatment as they do, would in effect stamp the case of the juvenile as a criminal case except insofar as his records would be protected from public disclosure. In such criminal prosecutions, Constitutional safeguards must be vouchsafed the accused.

It is a basic rule of statutory construction, however, that where legislation as drawn may be susceptible of two interpretations, by one of which grave and doubtful Constitutional questions arise, and by the other of which such questions are avoided, it is the Court's duty to adopt the latter construction. United States v. Rumely, 1953, 345 U.S. 41, 73 S.Ct. 543, 97 L.Ed. 770.

In light of the history of the manner in which Congress has dealt with erring youths in the Juvenile Court Act, D.C.Code, § 11–901 et seq., indicating no purpose to stamp the juvenile with criminal conviction, D.C.Code, § 11–929, except in extreme cases where waivers are made by the Juvenile Court, D.C. Code, § 11–914, it is reasonable to interpret the Act of Congress conferring authority on the Attorney General to designate places of confinement as intended to be limited to those where special facilities are provided for training and care, somewhat comparable to those of the National Training School for Boys, but with closer supervision where necessary for those that may prove to be otherwise intractable. In the absence of evidence to the contrary, the Court must assume the Attorney General will follow this interpretation. The transfer of a youth committed by Juvenile Court to the Medical Center for Federal Prisoners at Springfield, Missouri, as in Riley v. Pescor, D.C.Mo.1945, 63 F.Supp. 1, may be justified under this view if the Center provides necessary medical facilities not otherwise available and special provision is made for training and treatment of the youth, if not physically incapacitated, similar to facilities available at the Training School. Cases such as Harwood v. State ex rel. Pillars, 1947, 184 Tenn. 515, 201 S.W.2d

672, holding a person committed by Juvenile Court to a State Vocational School may be transferred to the State Penitentiary, can only be reconciled on the theory that Juvenile Court proceedings there are criminal and penal in nature, since the statute there in question provided for transfer of any incorrigible girl over fifteen years of age "who was regularly convicted of a felony."

From what has been stated, the District of Columbia Jail is not a proper place for the continued detention of petitioner. His detention there from April 23 to October 13, 1954, was lawful, since it arose out of criminal charges preferred against him in this Court. Since October 13, 1954, he has been held under the parole violation warrant based on the commitment of August 15, 1952. While a juvenile properly held in jail for a time may be further held there pending determination of the institution to which he shall be transferred, the transfer must be made with reasonable dispatch.

Accordingly, the writ of habeas corpus will be discharged, without prejudice to its being renewed unless the Attorney General has within ten days designated that petitioner be transferred to the National Training School for Boys or transferred to an institution with similar facilities.