**Lionel TAYLOR et al., Plaintiffs,**

**v.**

**Allen F. BREED et al., Defendants.**

**No. C-70-1522.**

United States District Court,
N. D. California.

Jan. 17, 1973.

Edward C. Bell, B. E. Bergesen, III, Youth Law Center, San Francisco, Cal., for plaintiffs.

Evelle Younger, Atty. Gen., Gloria F. DeHart, Deputy Atty. Gen., San Francisco, Cal., for defendants.

Before HAMLIN, Circuit Judge, and EAST and CARTER, District Judges.

## ORDER

OLIVER J. CARTER, District Judge.

This is a class action brought under the provisions of 42 U.S.C. §§ 1983 and 1988, as well as the Sixth, Eighth and Fourteenth Amendments to the United States Constitution. The complaint alleges, *inter alia*, that confinement at the Deuel Vocational Institution [hereinafter "DVI"] of juvenile wards of the California Youth Authority [hereinafter "CYA"] who have been adjudicated delinquent in juvenile court proceedings violates the aforementioned provisions of the Constitution.

The plaintiffs request a declaratory judgment that California Penal Code § 2037, which authorizes such confinement, is unconstitutional. They also seek an injunction against the further enforcement and operation of that statute insofar as it permits the transfer and confinement at DVI of juvenile court commitments.

Pursuant to 28 U.S.C. § 2281, the plaintiffs requested, and the Chief Judge of this Circuit has convened this Three-Judge Court to consider the above claims.

■■ The Court finds that jurisdiction is proper and that the plaintiffs' claims are not subject to state exhaustion requirements. Wilwording v. Swenson, 404 U.S. 249, 251, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971).

Presently before the Court in this action are several motions. The plaintiffs have moved for a partial summary judgment, for vacation of a protective order previously granted to the defendants pending the outcome of these motions, and for an order compelling answers to certain interrogatories which had been stayed by the aforementioned protective order. The defendants have moved the Court for dismissal or for summary judgment of the action.

*Mootness and Standing*

During argument on the instant motions, the defendants pointed out that the two named plaintiffs were no longer in DVI. According to the defendants, plaintiff Lionel Taylor is presently on parole, with his commitment to the CYA due to end on June 15, 1973. Plaintiff Henry Parker has been transferred from DVI to another institution, with his commitment set to expire on October 7, 1973. The defendants further assert that there are presently no CYA wards at DVI and that the current CYA policy is to place such wards in other facilities.

Nevertheless, the Court finds that the action is not moot and that the plaintiffs have the requisite standing to bring these claims before the Court.

■ A case is moot when there is no longer a subject matter on which the judgment of the Court can operate. St. Pierre v. United States, 319 U.S. 41, 42, 63 S.Ct. 910, 87 L.Ed. 1199 (1942); Singleton v. Board of Commissioners of State Institutions, 356 F.2d 771, 773 (5th Cir. 1966).

■ The fact that no CYA wards are presently being held in DVI, or that the CYA Board's present intention is to make no further transfers to that institution does not moot the claim. As long as the present statutory and regulatory language empowers the CYA to place its wards in DVI, there exists the subject matter on which this Court can operate.

■ The related question on the standing of the plaintiffs to challenge the statute or the procedures used for DVI commitments is likewise not an issue. The plaintiffs need only show past use of the facilities, where feasible, and a right to, or a reasonable possibility of future use. Singleton v. Board of Commissioners of State Institutions, 356 F. 2d 771, 773 (5th Cir. 1966).

Plaintiff Parker is still confined in a CYA institution, and there is nothing to prohibit his return to DVI at some future date under the present statute and regulations. Likewise, plaintiff Taylor is on parole and is subject to having that parole revoked for any one of a number of violations, whereupon he also could be returned to DVI.

Clearly, both the named plaintiffs have demonstrated past use of DVI and, so long as the statutory authority exists for their future commitment, they can claim a reasonable possibility of use at some later date.

*Motion to Dismiss*

The defendants have moved the Court for a dismissal of this action under Rule 12(b), F.R.Civ.P. The grounds stated are lack of jurisdiction and failure to

state a claim for relief against the defendants. The Court has already found that jurisdiction over this action is proper, and so the defendants' motion to dismiss on that ground must be denied without further comment. The other ground for dismissal, failure to state a claim against the defendants, must receive more careful consideration by the Court.

Ordinarily a motion to dismiss should not be granted. Where there is any doubt about the character of the action, doubts should be resolved in favor of the pleader. Pond v. General Electric Company, 256 F.2d 824, 826–827 (9th Cir. 1958), cert. den., 358 U.S. 818, 79 S.Ct. 30, 3 L.Ed.2d 60 (1958).

Basically, the plaintiffs' complaint raises two fundamental constitutional issues. The first is whether a minor who has been adjudicated delinquent by a juvenile court may, through proceedings which did not afford him many basic due process safeguards required by the Constitution in all criminal trials, be thereafter transferred to and confined in an institution such as DVI, which the plaintiffs allege is in effect, if not in name, a prison.

The second issue raised by the plaintiffs' complaint is whether the Fourteenth Amendment requires that a CYA ward be afforded certain minimum procedural safeguards at CYA Board hearings which are held to determine whether or not he should be placed on parole, or be transferred to a functionally distinct institution such as DVI.

The defendants' motion to dismiss is grounded on the assertion that neither of the two aforementioned issues raises a possible constitutional violation. It is not a simple matter to answer the questions which the defendants pose with this motion. Nevertheless the Court must deny it for the following reasons.

In cases factually similar to this the state courts have not been uniform with their decisions. Some states have upheld the constitutionality of juvenile commitments to penal institutions. *E. g.*, Shone v. State, 237 A.2d 412 (Me. 1968); Wilson v. Coughlin, 259 Iowa 1163, 147 N.W.2d 175 (1966); People v. Scherbing, 93 Cal.App.2d 736, 209 P.2d 796 (1949); In re Robertson, 5 Terry 28, 44 Del. 28, 54 A.2d 848 (1947).

Other states have found various constitutional infirmities in commitments or procedures similar to those under attack here. *E. g.*, Boone v. Danforth, 463 S.W.2d 825 (Mo.1971); In re Rich, 125 Vt. 373, 216 A.2d 266 (1966); State v. Owens, 197 Kan. 212, 416 P.2d 259 (1966).

However conflicting the state courts may be on the matter of juvenile commitments in penal institutions, it would appear to this Court, in light of recent federal decisions in related fields, that the plaintiffs may have stated valid claims for relief.

It is of course familiar law that the procedural rights of juveniles have been expanded considerably by the United States Supreme Court in recent years. *See* discussion and cases listed in McKeiver v. Pennsylvania, 403 U.S. 528, 531–534, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). However, the precise claims raised in the instant complaint have not heretofore been considered by that court. Therefore, those cases which that court has decided in the area of juvenile rights must be synthesized with recent decisions it has handed down in related fields.

For example, in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court held that the Due Process clause applies to the action of a state administrative agency in revoking parole and that certain minimum procedural requirements must be met therefor.

In Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), the

court considered the Indiana statutory scheme whereby a defendant believed to be incompetent to stand trial could be confined in a mental institution until he became "sane". The standards and procedure for commitment of such a person afforded less protection to the defendant, however, than did other Indiana statutes permitting confinement of "feeble-minded" or "mentally ill" persons. This disparity of substantive and procedural protections was struck down by the court as violative of such defendant's rights to due process and equal protection.

In one far-reaching decision, the court announced the requirement of the Sixth Amendment Right to Counsel at the imposition of sentence, even where such sentencing had been deferred several years after judgment. Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967).

A year earlier than the *Mempa* decision, the court in Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), found a violation of equal protection in a New York statutory procedure which authorized civil commitment of insane prisoners nearing the end of their term, without affording them the procedural rights available to all others civilly committed. *See also* Specht v. Patterson, 389 U.S. 605, 87 S. Ct. 1209, 18 L.Ed.2d 326 (1967).

But perhaps the most succinct statement of the possible claims in the instant case is contained in the following comment from White v. Reid, 125 F. Supp. 647, 651–652 (D.D.C.1954):

"To send a juvenile to the usual penitentiary where hardened criminals are kept in close confinement and under special types of strict discipline, where the juvenile would inevitably come into contact with them and suffer the same type of treatment as they do, would in effect stamp the case of the juvenile as a criminal case except insofar as his record would be protected from public disclosure. In such criminal prosecutions, Constitutional safeguards must be vouchsafed the accused."

■ It is clear that no one case discussed above is dispositive. Those cases in which the Supreme Court has expansively defined the rights of juvenile offenders must be read together with those cases which have set out the rights of persons admittedly not juveniles, but whose factual situations ally them more closely to the case at bar. It is within this synthesis that the plaintiffs' claims must be understood. Moreover, this entire list of cases is sewn together by the fact that the applicable due process standard in juvenile proceedings remains one of "fundamental fairness". McKeiver v. Pennsylvania, 403 U.S. 528, 543, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).

For these reasons, the Court cannot gainsay the plaintiffs the opportunity to present their full case at a trial on the merits, and the defendants' motion to dismiss must accordingly be denied. See Haines v. Kerner, 404 U.S. 519, 520–521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

*Motions for Summary Judgment*

■ The plaintiffs have moved the Court for a partial summary judgment on what they term the "DVI Branch" of the case. It is in this branch that they claim the commitment of juveniles to DVI is unconstitutional. The plaintiffs state that the facts conclusively establish DVI as a primarily penal rather than rehabilitative institution. The defendants, on the other hand, claim precisely the opposite from the facts, and they have moved for a summary judgment of the whole action.

The Court disagrees with both moving parties; the factual issues have not been conclusively established in favor of

either of their respective motions. There remain for resolution at trial genuine issues on several material facts. *See* Rule 56(c), F.R.Civ.P. In addition, the Court believes that there are several important areas from which it requires further evidence before a final ruling can be made.

Of course, the most obvious factual issue still unresolved, and one for which additional evidence might be produced, is the exact nature of DVI. The plaintiffs characterize it as a prison. The defendants, on the other hand, contend that such a characterization is an oversimplification. Rather than apply one "label" or another, the defendants suggest that DVI should be observed as a part of California's "enlightened, flexible system for the treatment and rehabilitation of juveniles and young adults."

Without embroiling itself in this contest of semantics and nebulous phrases, the Court simply notes that neither the parties' terminology nor their evidence establishes anything conclusive on the nature of DVI.

As a sidelight, the Court must also note that California law itself provides no solution. In fact, at least one California court has admitted that the statutes governing DVI are "ambiguous." *See* People v. Romo, 256 Cal.App.2d 589, 64 Cal.Rptr. 151 (1967).

Thus, the Court must examine closely the evidence concerning juvenile commitments in DVI. At this time, it is sufficient to say that a substantial conflict exists in the factual record now before the Court. Although the parties have stipulated to certain general facts concerning the institution, the Court finds these facts only helpful, but by no means conclusive.

Both sides must produce more evidence, including testimony regarding DVI. Simple self-serving terminology is not enough if the Court is to heed the caution in the landmark case of In re Gault, 387 U.S. 1, 29–30, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1957), that "[a]s wide a gulf between the State's treatment of the adult and of the child requires a bridge sturdier than mere verbiage . . . . ."

A correlate of the factual conflict over the characterization of DVI is the dispute concerning the extent to which that institution provides rehabilitative treatment to CYA wards therein. At least one federal court has found possible constitutional violations where juveniles have been committed for purposes of punishment rather than for guidance and training. *See* Kautter v. Reid, 183 F.Supp. 352 (D.D.C.1960) and White v. Reid, 125 F.Supp. 647 (D.D.C.1954).

Both sides have, by allegation or affidavit, placed in contention the treatment and rehabilitation, or lack thereof, which is available to CYA wards confined in DVI. It is sufficient that the Court here notes this factual dispute and suggests that the parties submit further evidence in support of their respective contentions at trial.

Another and related issue on which the Court feels there is a conflict, and for which further evidence might be produced, concerns the effect of mingling adult felons and juvenile wards in one facility, such as DVI. Whatever the nature of the institution, it may be that such a mixing is fatal to the constitutionality of the confinement. *See* White v. Reid, 125 F.Supp. 647 (D.D.C.1954).

California law specifically prohibits the commingling with adult prisoners of CYA wards under eighteen years of age who have been committed to institutions in which such adults are confined. California Welfare & Institutions Code § 508. Despite this clear mandate, the plaintiffs allege that such commingling does, in fact, occur at DVI.

Although this Court is not so much concerned with whether the CYA is violating state law, it is concerned with what effects such commingling, if it

does occur, has on the youthful offenders, in order to evaluate the possible constitutional implications.

From the foregoing, it is apparent that there are several conflicts in material facts which preclude the grant of any motion for summary judgment. The Court is mindful that it is not the role of the judiciary to run prisons. Nevertheless, possible legal claims have been stated, and a factual conflict surrounds these claims. The Court therefore is required to provide a forum in which both sides will have full opportunity to develop their respective positions.

*Protective Order and Motion to Compel*

The plaintiffs have requested vacation of the protective order granted to the defendants on April 14, 1971. The Court agrees that this order should now be vacated. The discovery was originally stayed pending a decision on the instant motions. In light of the Court's disposition today of all pending motions, there appear to be no grounds for continuing the protective order.

The plaintiffs seek also to compel answers to interrogatories propounded to defendant L. N. Patterson on December 28, 1970, which answers were stayed by the aforementioned protective order. The Court will deny this motion to compel. Defendant Patterson shall be permitted the statutory time to object or answer the interrogatories, this time period to begin with the date of signing of this order.

*Temporary Restraining Order*

The plaintiffs originally moved for various temporary restraining orders with respect to the treatment of the plaintiffs and their attorneys while in DVI. As the plaintiffs are not presently confined at that institution, and the CYA has expressed an intention not to commit juveniles there at present, these motions appear to be moot. Therefore they will be denied.