[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
1. NATURE OF PROCEEDINGS:
By Petition and Addendum to Petition, both filed January 17, 1991, the Commissioner of the Department of Children and Youth Services, (hereinafter "D.C.Y.S.") seeks termination of the parental rights of Kris R., mother, and Derrick C., father, in Justin C., date of birth September 21, 1987, pursuant to Section 17a-112 formerly 17-43a of the Conn. Gen. Statutes (Rev. 1991), applicable to children previously committed to D.C.Y.S. This petition alleges, as to both parents; abandonment, in that the parents failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child, and the denial, by reason of act or acts of commission or omission, of the care, guidance or control necessary for his physical, educational, moral or emotional well-being, and as to the mother alone; her failure to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, she could assume a responsible position in the life of the child. The Petition further alleges that all of the claimed grounds have existed for not less than one year, except for the mother's abandonment of Justin C., so for that ground the Petitioner alleged that a waiver of the one year period is necessary to promote the best interest of the child. At the initial plea hearing on February 6, 1991, substitute service of process was confirmed on both the mother and father by publication. Kris R. did not appear in court at that hearing, but her court appointed counsel did appear and denied the allegations. The father did not appear, either personally, or through counsel, so he was defaulted for failure to appear. The case was continued for trial which began on March 27, 1991. Neither parent appeared for trial; the Court found that both parents had been notified of the March 27, 1991 trial date by publication. Counsel for the mother made an oral motion for a two week continuation of trial, although he stated that Kris R. knew about the March 27, 1991 trial date. The motion was denied, and trial began.
2. FACTS
Evidence offered at trial supports the finding of the following facts: CT Page 4290
Kris R. voluntarily placed Justin C. into foster care on August 16, 1989, because she left a motel in Hartford where she had been placed following her eviction, because she wanted to be near her friends in Rockville, and had no home for Justin. A second reason for this voluntary placement was that she was suffering from substance abuse.
From August 16, 1989 to March 9, 1990, the date when Justin was adjudicated as neglected and uncared for, Kris visited him eight (8) times in the first six (6) weeks, once in October, once in November, twice in December and not once in either January or February, 1990. She telephoned his foster home four times in August, once in September, once in October, not at all in November, once in December, twice in January 1990, and not once in February. She did not ask to speak to Justin in any of these phone calls.
On March 9, 1990, by agreement, the child was adjudicated as neglected and uncared for and was committed to the custody of D.C.Y.S. for eighteen (18) months. The mother was present and the court set expectations for her as follows:
1. Keep all appointments set by or with D.C.Y.S.
2. Visit child as often as D.C.Y.S. permits, Mother to have supervised visits at least bi-weekly.
3. Mother to complete in-patient program at Norwich and follow aftercare recommendations.
4. Secure adequate income.
5. Procure adequate housing.
6. Mother to attend A.A. if recommended by Norwich program.
In the signed expectation sheet, Mother was told in heavy black print with all capital letters to KEEP YOUR LAWYER AND D.C.Y.S. WORKER INFORMED OF YOUR ADDRESS AT ALL TIMES.
From the date of these expectations, March 9, 1990 to January 17, 1991, the date of the termination petition, a period of ten (10) months and one week, the Mother made only two (2) phone calls to the foster home, both in September 1990. She did visit Justin fairly regularly from the time she was discharged from the twenty-eight (28) day in-patient Rehabilitation Program at Boneski Treatment Center on May 1, 1990, until the last visit on October 2, 1990. For most of CT Page 4291 these visits, D.C.Y.S. brought the child to the Mother's apartment. From October 2, 1990 to January 17, 1991, neither D.C.Y.S. nor the foster parents heard anything whatsoever from Kris R., nor did they have any idea how she could be reached. The maternal grandmother testified that she also did not know how to reach Kris during this three and one-half (3 1/2) month period; that a friend of Kris told her that she had gone to Oklahoma. Kris called her once during this period, on January 7, 1991, but refused to tell her where she was or how she could be reached. She said she was with the father, who was fleeing from the law.
It is undisputed that neither the child, D.C.Y.S., nor the foster family has had any contact with Derek C., father, since placement in 1989, except a call to D.C.Y.S. in 1989, shortly after placement.
Petitioner's Exhibit Number Seven, a Letter of Completion from Boneski Treatment Center on May 1, 1990, states that: "Kris Ribaudo is well-informed that completion of the Program is only a first step on the road to recovery and that it is imperative to adhere to the aftercare plans; a major part of which is to attend AA, NA and other self-help group meetings."
After discharge, she completed a six (6) to eight (8) week program at Rockville General Hospital, consisting of Sunday and Monday evening A.A. meetings, and Thursday morning individual counseling sessions. However, Susan Hubbard, D.C.Y.S. Social Worker, testified that Kris stopped going to A.A. meetings and stopped seeing a counselor because she was tired from working. She had a job in Rockville from May 25, 1990 until July 1990, when she went on Town Assistance. She started counseling with Ms. McKee at Hockanum Valley Community Services, but did not continue.
The foster home where Justin has been continuously since August 1989, has been a safe, stable and loving home in which Justin has improved and thrived and to which he is strongly bonded.
3. LAW
The controlling law in Connecticut on termination of parental rights as stated in In Re Luis C., 210 Conn. 157,164-65 (1989), is as follows:
 "The termination of parental rights is defined as `the complete severance by court order of the legal relationship, with all its rights and CT Page 4292 responsibilities, between the child and his parent . . . .' General Statutes Sec. 17-32a(e) (Rev. to 1972) (now Sec. 45-61b(g)). Although that ultimate interference by the state in the parent-child relationship may be required under certain circumstances, the natural rights of parents in their children `undeniably warrants deference and absent a powerful countervailing interest, protection.' Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551
(1972); see In Re: Appeal of Kindis, 162 Conn. 239, 240, 294 A.2d 316 (1972); Cinque v. Boyd, [99 Conn. 70, 82, 121 A. 678 (1923)]." Anonymous v. Norton, 168 Conn. 421, 425, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S.Ct. 294, 46 L.Ed.2d 268 (1975). Termination of parental rights is "a most serious and sensitive judicial action." Id., 430.
 "Section 17-43a carefully sets out. . . four situations that, in the judgment of the legislature, constitute `countervailing interests' sufficiently powerful to justify the termination of parental rights in the absence of consent. The commissioner of children and youth services, in petitioning to terminate those rights, must allege and prove one or more of the statutory grounds. In contrast to custody proceedings, in which the best interests of the child are always the paramount consideration and in fact usually dictate the outcome, in termination proceedings the statutory criteria must be met before termination can be accomplished and adoption proceedings begun. No all-encompassing `best interests' standard vitiates the requirement of compliance with the statutory criteria. See Alsager v. District Court of Polk County, [406 F. Sup. 109 S.D.Iowa 1975), aff'd, 545 F.2d 1137 (8th Cir. 1976)]; In Re: Adoption of Children by D., 61 N.J. 89, 293 A.2d 171 (1972); Malpass v. Morgan, 213 Va. 393, 192 S.E.2d 794
(1972); Ketcham Babcock, "Statutory Standards for the Involuntary Termination of Parental Rights in Adoption Cases: Focusing on the Child,' 14 J. Fam. L. 547, 550 (1975)." In re Juvenile Appeal (Anonymous), 177 Conn. 648, 671-72, 420 A.2d 875
(1979).
The termination of parental rights involves two phases: adjudication and disposition. The court must first determine whether one or more of the statutory grounds that have been alleged have been proven. In Re Juvenile Appeal, 192 Conn. 254
CT Page 4293 (1984). A finding that statutory grounds exist must be made by proof of facts existing on the date the petition was filed or amended. Without such a finding, no inquiry may be made as to the ultimate best interests of the child. In Re Juvenile Appeal, 188 Conn. 259 (1982).
4. STANDARD OF PROOF
The standard of proof mandated by Conn. Gen. Stat. Sec.17a-112 (b) and Conn. Practice Book Section 1049 is "clear and convincing evidence." See also IN RE Juvenile Appeal,189 Conn. 276 (1983).
5. THE PETITIONER'S CLAIM THAT ONE OR MORE STATUTORY GROUNDS EXIST
The Petitioner claims that the facts existing on the date the petition was filed, January 17, 1991, prove one or more of the statutory grounds alleged as a basis for termination of parental rights. Any ground relied upon must have existed over an extended period of time, which shall be not less than one year unless a waiver is alleged and found pursuant to Conn. Gen. Stat. Section 17-112(c). Those grounds are as follows:
A. Abandonment
Conn. General Statutes Section 17a-112 (b)(1) defines abandonment as the parents' failure "to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child."
"Where a parent fails to visit a child, fails to display any love or affection for the child, has no personal interaction with the child and no concern for the child's welfare, statutory abandonment has occurred." In Re Rayna13 Conn. App. 23, 36 (1987).
1. Father
The Court enters a finding that the Father has abandoned the child within the legal meaning of that term and that such abandonment has existed for more than one year.
2. Mother
The Petitioner has proved by clear and convincing evidence that since October 2, 1990, Kris has failed to maintain a reasonable degree of interest, concern or responsibility in the welfare of her son. CT Page 4294
Since that time she has voluntarily and totally removed herself from Justin's life. She placed herself in a position where she could not be reached, even if Justin were to have become seriously ill, or even if he died. The Court views this as the equivalent of Mother saying to her Son; "As far as I am concerned, you do not exist, and as far as you are concerned, I do not exist." She did not send a Christmas card or even make a telephone call.
Waiver of One Year Requirement
Section 17a-112(c) of the Conn. Gen. Statutes provides that "The court may waive the requirement that one year expire prior to the termination of parental rights if it finds from the totality of circumstances surrounding the child, that such a waiver is necessary to promote the best interest of the child."
Upon the record of this case, such necessity is found.
First of all, the total failure to show any reasonable degree of interest, concern or responsibility since October 2, 1990 is far greater than the conduct required by statute to constitute abandonment.
Secondly, a three year old child who has been in placement since he was twenty-two and one-half (22 1/2) months old, should not be required to wait before being assured of a permanent home that is predictably safe and nurturing unless the parent can convince the trier of fact that her standard of caretaking can be permanently improved in a short period of time. Kris R. offered no evidence at all to suggest that anything will be different in the future. The Court was given no basis whatsoever to conclude that any further delay might correct Mother's difficulties. She has completely severed any connection with Justin, and no one involved in this case, even her mother, even knows where she is, except that she is living somewhere in Oklahoma with a fugitive from the law. Justin should not have to wait for Mother to make up her mind whether she will return to his life and should that happen, to wait for an indeterminate, if not indefinite time to see whether she will be willing or able to establish a meaningful relationship with him.
Since the past is the clearest predictor of the future, this record supports by clear and convincing proof that a waiver of the one year requirement is necessary to promote the best interests of the child. This is especially so because her lack of interest, concern and responsibility in CT Page 4295 Justin's welfare became greater rather than less as time went on.
B. Acts of Parental Omission or Commission
The Court finds that the Petitioner has not proven this ground by clear and convincing evidence. No evidence was presented that the child was denied any necessary care, guidance or control as a result of acts of commission or omission. While Justin may well have been denied the attention and care of his natural parents, that alone is not proof that he was deprived of any necessary care. Without proof of deprivation of care, this ground cannot be found. Therefore, this ground is dismissed as to both parents.
C. Failure to Rehabilitate (Mother Only)
The Petitioner has alleged failure to rehabilitate as one of the grounds justifying termination of parental rights.
This ground is defined in Conn. Gen. Statutes, Section17a-112 (b)(2), as follows:
 The parents of a child who has been found by the superior court to have been neglected or uncared for in a prior proceeding have failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, they could assume a reasonable position in the life of the child.
It is undisputed that on March 9, 1990, the Court found the child to be neglected and uncared for, and committed him to the Petitioner.
The second element of this ground is the failure to achieve a degree of personal rehabilitation, etc. As used in this statute, our courts have said that "personal rehabilitation" refers to the restoration of a parent to her former constructive and useful role as a parent. In Re Migdalia M., 6 Conn. App. 194, 203 (1986).
On March 6, 1990, the date of neglected, uncared for adjudication of Justin, expectations were set and signed by Kris R. (Petitioner's Exhibit 6).
She did not follow all of the aftercare recommendations of the Boneski Center in that she did not stay in individual counseling, did not continue attending A.A. meetings, did not CT Page 4296 visit the child as often as D.C.Y.S. permits, did not secure adequate income (quit her job in July 1990, and went on Town welfare), did not keep all appointments set by or with D.C.Y.S., and did not obtain adequate housing.
Susan Hubbard, Social Worker, testified that based on what Kris' mother, Beverly Ribaudo, told her, Kris reverted to substance abuse after being released from Boneski in early May, 1990.
From the date of placement, August 16, 1989, to January 17, 1991, the date of the filing of the termination petition, a period of seventeen (17) months, Kris had the opportunity to rise back to a point at which she would become Justin's full caretaker. Not only has she failed to do so, she was even further away from that level on January 17, 1991, than she was on August 16, 1989. She was going backwards rather than forwards.
The Court finds that the evidence was clear and convincing that Mother has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of her child, she could assume a reasonable position in his life. This ground has existed for more than one year, and the Court finds that even if it had existed for less than one year, that requirement is waived for the same reasons it was waived in the abandonment ground as previously discussed in this opinion.
6. DISPOSITION
Having found that both parents abandoned the child, and that the Mother failed to rehabilitate, the Court now proceeds with the dispositive phase. Proof of one or more of the statutory grounds does not bring forth orders of termination automatically. To warrant a destruction of the parent-child relationship, the court must also find from clear and convincing evidence that a termination of parental rights is in the best interests of the child. In Re Nicolina T., 9 Conn. App. 598, 602 cert. denied, 203 Conn. 804 (1987). By the express language of Section 17a-112(d) of the Conn. General Statutes, Rev. of 1991, the Court, in determining whether to terminate parental rights, shall consider and make written findings regarding the six (6) factors enumerated therein.
The Court hereby sets forth written findings on those factors as of April 1, 1991, the day the trial ended. CT Page 4297
A. The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent.
From the time of placement on August 16, 1989, until Mother cut herself off completely from the reach of D.C.Y.S. in October of 1990, D.C.Y.S. consistently tried to facilitate reunion by doing the following:
 1. Brought Mother to Norwich Hospital for intake interview in October 1989 and January 1990, and brought her there for admission on April 3, 1990.
 2. Referred Mother to Rockville Hospital for out-patient alcohol counseling, to shelters, to Hockanum Valley for housing counseling, and to town welfare.
 3. Contracted with Parent Aide to bring child to Mother's apartment for supervised visits, initially once a week, then twice a week.
 4. Provided Mother with twenty-four (24) hour Care-Line telephone number.
 5. Department of Mental Retardation evaluated Justin and referred him to Manchester Child Guidance Clinic. Mother was given an appointment twice in September 1990, and once in October 1990, to meet with the clinic and participate in Justine's evaluation. She cancelled one appointment, and did not show up for the other two. No contact with the Father was possible.
B. The terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order.
No expectations were set for Father since he never appeared in court. The Court set expectations for Mother on March 9, 1990, which she partially complied with at first, but gradually slackened off until October 2, 1990, since which date Mother has placed herself totally out of contact with foster family, child and D.C.Y.S.
C. Feelings and emotional ties of the child with respect to his parents and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties. CT Page 4298
There is no evidence that the child has any memory of his father.
As to the Mother, Dr. Nancy A. Eiswirth, Psychologist, testified that as of January 17, 1991, Child had not indicated to her any desire to see Mother. Since Child last saw or heard from Mother on October 2, 1990, he is calmer and less emotional, less given to tantrums. The Court finds no evidence of any emotional ties to his Mother, and that he is attached to foster mother and her family, shows anxiety at separation from her, and that removal from her would be traumatic for him.
D. Age of Child
When the trial ended, Justin was three years and six months old, having been born on September 21, 1987.
E. Efforts the parents have made to adjust their circumstances, conduct or conditions to make it in the best interest of the child to return him to his home in the forseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the Court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child.
The Father has had no contact of any kind with the child at least since August of 1989.
The Mother has had no contact whatsoever with Justin since October 2, 1990, and her whereabouts are unknown; she has not even left a telephone number. She has had no contact whatsoever with the foster family or D.C.Y.S. since October 2, 1990 and she has not sent any cards, letters or presents.
F. Extent to which parents have been prevented from a meaningful relationship with the child by the unreasonable act or conduct of the other parent, or the unreasonable act of any other person or by the economic circumstances of the parent.
Neither Mother nor Father was prevented from maintaining a relationship with Justin. Mother was encouraged to maintain such a relationship, and father has not been heard from at all for more than a year and one-half. CT Page 4299
At trial, foster mother testified that she and her family would like to adopt Justin.
Dr. Eiswirth testified that early disposition of this matter will be in Justin's best interest. In Petitioner's Exhibit 2, Dr. Eiswirth stated that "Expediency by D.C.Y.S. for Justin's permanency planning is vital."
The Court is also taking into account the Father's defaults and the absence of both parents from trial, and the fact that Mother did not contact her attorney even though she knew the date the trial was to begin.
A termination of the parental rights of Derek C. and Kris R. in and to their minor child, Justin C. is ordered.
Pursuant to General Statute 17a-112(f), it is further ordered that the Commissioner of D.C.Y.S. is appointed as statutory parent of Justin C., so that he can be placed in adoption. D.C.Y.S. is required to submit to the Court a case plan within ninety (90) days of this judgment, and every six months thereafter until the adoption has been finalized.
RICHARD A. WALSH SUPERIOR COURT JUDGE